Stephen M. Lobbin (CA Bar No. 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
(949) 636-1391

*Counsel for Plaintiff Vision Sphere Labs LLC*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VISION SPHERE LABS LLC,**<br><br>Plaintiff,<br>v.<br><br>**MSI COMPUTER CORPORATION,**<br><br>Defendant. | Case No. 2:26-cv-12366<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Vision Sphere Labs LLC files this Original Complaint for Patent Infringement against MSI Computer Corporation, and would respectfully show the Court as follows:

## I. NATURE OF THE LAWSUIT

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") resulting from MSI Computer Corporation, infringing, in an illegal and unauthorized manner and without authorization and/or consent from Vision Sphere Labs LLC, United States

Patent No. 7,990,860 pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

## II. THE PARTIES

Plaintiff Vision Sphere Labs LLC ("Plaintiff") is a Texas limited liability company with a place of business located at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2. On information and belief, Defendant MSI Computer Corporation ("Defendant") is a corporation organized and existing under the laws of California with a place of business at 901 Canada Court, City of Industry, California 91748. Defendant has a registered agent Connie Yuchuan Chang, 901 Canada Court, City of Industry, California 91748.

## II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the California Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant

maintains a place of business at 901 Canada Court, City of Industry, California 91748.

5. Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within California and this District. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in California and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within California and this District. Defendant has committed such purposeful acts and/or transactions in California and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 901 Canada Court, City of Industry, California 91748. Further Defendant is incorporated in California. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

## III. <u>UNITED STATES PATENT NO. 7,990,860</u>

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On August 2, 2011, United States Patent No. 7,990,860 ("the '860 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '860 Patent is titled "Method and System for Rule-Based Sequencing for QoS." A true and correct copy of the '860 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Vision Sphere Labs LLC is the assignee of all right, title, and interest in the '860 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '860 Patent. Accordingly, Vision Sphere Labs LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '860 Patent by Defendant.

11. The invention in the '860 patent relates to an improved method for communicating data over a network to provide Quality of Service ("QoS") that includes prioritizing the data a communicating the data based at least in part on the priority. (Ex. 1 at Abstract).

12. Communications networks typically include multiple nodes connected by links and are typically bandwidth constrained such that there is more

data to be communicated than bandwidth available at any given point in time. (*Id.* at 1:10-12; 2:51-53). This constraint can be caused by the demand for bandwidth exceeding the supply and/or the available communications technology not supplying enough bandwidth to meet the needs of the user. (*Id.* at 2:54-57). In bandwidth-limited networks, less important data can clog the network and prevent more important data from getting through in a timely fashion or arriving at all. (*Id.* at 2:58-62). Networks can also include internal buffering to compensate for unreliable links in the communications network, which can lead to addition delay or data loss. (*Id.* at 2:62-65). Bandwidth can also change dynamically due to, for example, quality of service, jamming, signal obstruction, and priority reallocation. (*Id.* at 3:10-12).

13. There are known approaches for delivering data over a communications network, including QoS. (*Id.* at 4:16-17). QoS refers to capabilities of a network to provide various forms of guarantees with regard to data that is carried in a communications network. (*Id.* at 4:16-18). The primary goal of QoS is to provide priority such as dedicated bandwidth, controlled jitter and latency, and improved loss characteristics. (*Id.* at 4:28-32). Another important goal of QoS is to make sure that providing priority for one flow does not make other flows fail. (*Id.* at 4:32-33).

14. Current approaches to QoS often require every node in a network to support QoS or at least every node in the network involved in a particular

communication to support QoS. (*Id.* at 4:36-39). This type of approach does not scale well because of the large amount of state information each node must maintain, and the overhead associated with setting up connections. (*Id.* at 4:47-50).

15. Furthermore, existing QoS solutions are often network specific and could only classify messages based on the header such that messages that looked the same to the current QoS systems may have different priorities based on message content. (*Id.* at 4:62-67). This can result in users requiring access to high-priority data being flooded by lower-priority data. (*Id.* at 4:67-5:1).

16. Existing QoS systems also could not provide QoS based on message content at the transport layer of the Open System Interconnection (OSI) seven-layer protocol model. (*Id.* at 5:2-3; 1:51-56). The patent explains that the "Transmission Control Protocol (TCP)," which is the protocol at the transport layer, requires several forms of handshaking and acknowledgements to occur in order to send data," which can result in high latency and loss if the TCP hits time outs and is not able to send much, if any, meaningful data over a network. (*Id.* at 3:51-57).

17. The inventors therefore recognized the need for systems and methods that provide QoS on the edge of a data network and a need for adaptive and configurable QoS systems and methos in a data network. (*Id.* at 5:19-22). The inventions disclosed in the '860 Patent were unconventional solutions to problems arising in the context of communications networks that used existing QoS systems

that did not scale well, needed better jitter and latency control, needed improved data loss, and required better QoS than relying on the header. (*E.g.*, *id.* at 1:51-56, 2:58-62, 3:51-57, 4:28-32, 47-50, 4:67-5:3, 5:19-22). The invention improved the technical functioning of computer data networks using an unconventional solution for prioritizing data configured to operate at the transport layer of the protocol stack and based at least in part on a user defined rule.

## IV. <u>COUNT I</u>
## <u>(PATENT INFRINGEMENT OF U.S. PATENT NO. 7,990,860)</u>

18. Upon information and belief, Defendant has directly infringed claim 1 of the ‘860 Patent in California, in this District, and elsewhere in the United States, by making, using, selling, and/or offering for sale the including but not limited to the RadiX AX6600-E WiFi 6 Tri-Band Gaming Router, RadiX AX6600 WiFi 6 Tri-Band Gaming Router, and RadiX AXE6600 WiFi 6E Tri-Band Gaming Router (each an “Accused Instrumentality” collectively “Accused Instrumentalities”). The RadiX AX6600 WiFi 6 Tri-Band Gaming Router is shown as an exemplar of the infringement and all Accused Instrumentalities infringe similarly.

19. **<u>Direct Infringement</u>**. As explained below, each Accused Instrumentality performs a method for communicating data over a network to provide quality of service that infringes claim 1 of the ‘860 Patent. The RadiX AX6600 WiFi 6 Tri-Band Gaming Router is used as an exemplary product,

however, all MSI Gaming Routers operate in the same manner. Each Accused Instrumentality performs traffic control based on quality of service.




(*E.g.*, https://www.msi.com/Networking/RadiX-AX6600-WiFi-6-Tri-Band-Gaming-Router.com).

| | |
|---|---|
| **PROCESSOR** | Quad-core 1.8GHz processor |

| | |
|---|---|
| **TRAFFIC CONTROL** | AI QoS<br>Traditional QoS<br>Bandwidth limiter<br>Real-time traffic monitor |

(*E.g.*, https://us.msi.com/Networking/RadiX-AX6600-WiFi-6-Tri-Band-Gaming-Router/Specification.com).

20. Each Accused Instrumentality performs the step of performing by at least one processing device, at least: receiving data at a data communication system operating on a node at an edge of a network. Each Accused Instrumentality has the capabilities to perform Real-time traffic monitor and QoS.

**What is QoS in networking?**

If you've shopped for routers or explored your router's admin page, you would've come across the term 'QoS' or Quality of Service.

So, what exactly is it?

QoS controls traffic prioritization in a way to ensure more important traffic can make it through on priority. For users, this should theoretically mean a stable and consistent networking experience for a variety of real-time applications.

Traffic prioritization

For example, if a router is presented with the option of delivering a packet for a voice call or a web page, it should prioritize the real-time call traffic packets to ensure crystal-clear communication.

*It's important to note that QoS can only help when the bottleneck is at the router (or network access point).*

(*E.g.*, https://us.msi.com/blog/what-is-msi-ai-qos.com).

| | |
|---|---|
| **WAN** | WAN Type : DHCP / Static IP / PPPoE / PPTP / L2TP<br>Port triggering<br>Port forwarding<br>DMZ<br>NAT Passthrough : PPTP / L2TP / IPSec / RTSP / H.323 / SIP / PPPoE<br>UPnP<br>DDNS |
| **WIRED INTERFACE** | 2.5 Gigabits port for WAN/LAN x1,<br>Gigabit port for WAN/LAN x1,<br>Gigabit port for LAN x3,<br>USB 3.0 Gen 1 x1 |

(*E.g.*, https://www.msi.com/Networking/RadiX-AXE6600-WiFi-6E-Tri-Band-Gaming-Router/Specification.com).

The relevant topology of the system in which each Accused Instrumentality is used is: Internet / upstream network → WAN port [MSI RadiX router] LAN/Wi-Fi → local devices. MSI itself identifies the interfaces in terms of:

- incoming Internet
- WAN
- outgoing LAN
- Router mode

In its router configuration, it is the device sitting between the upstream Internet/WAN and the downstream local network.

21. Each Accused Instrumentality performs the step of determining a network status from a plurality of network statuses based on analysis of network measurements. Each Accused Instrumentality provides a QoS (Quality of Service) feature that is essential for ensuring that important traffic can be prioritized with the limited bandwidth on the router. As shown below, the role of QoS on each Accused Instrumentality is to determine a network status from a plurality of network statuses based on analysis of network measurements, to then make decisions about how to allocate limited upload and download bandwidth

> That's precisely what QoS features were designed for – ensuring stable and uninterrupted connected experiences even when nearing network/bandwidth capacity.

(*E.g.*, https://www.msi.com/blog/what-is-msi-ai-qos).

## What is QoS in networking?

If you've shopped for routers or explored your router's admin page, you would've come across the term 'QoS' or Quality of Service.

So, what exactly is it?

QoS controls traffic prioritization in a way to ensure more important traffic can make it through on priority. For users, this should theoretically mean a stable and consistent networking experience for a variety of real-time applications.

For example, if a router is presented with the option of delivering a packet for a voice call or a web page, it should prioritize the real-time call traffic packets to ensure crystal-clear communication.

*It's important to note that QoS can only help when the bottleneck is at the router (or network access point).*

(*E.g.*, https://www.msi.com/blog/what-is-msi-ai-qos).

22. Each Accused Instrumentality performs the step of selecting a mode from a plurality of modes based on the determined network status, wherein each of the plurality of modes corresponds with at least one of the plurality of network statuses, wherein each of the plurality of modes comprises a user defined sequencing rule. An example of this inherent system is shown in the Traditional QoS setup screen below. These images of the Traditional QoS configuration screen show the ability to set user-defined sequencing rules, which can assign priority groups to each link, and allocate a specific proportion of Download and Upload bandwidth to each priority group.




(*E.g.*, [https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com](https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com)).




(*E.g.*, [https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com](https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com)).

How this configuration is applied in the claimed manner is, for example, there are 3 distinct types of traffic on the MSI Router: Voice, Gaming, and Video.

The user can set, for example, the following user-defined rules:

- Gaming is High priority
- Voice is Medium priority
- Video is Low priority

Upload and Download Bandwidth are both 100 Mb/s. Also, for example, the bandwidth proportions for High, Medium and Low categories of traffic are set as follows:

- High: 50%
- Medium: 30%
- Low: 20%

Based on these exemplary network status cases, Traditional QoS chooses a different mode from the plurality of modes to ensure the prioritization of traffic follows these rules. For instance:

Case 1: the network status is that each of the three traffic types are demanding these speeds

- Gaming: 80 Mb/s
- Voice: 0 Mb/s
- Video: 50 Mb/s

The resulting mode chosen is that Gaming traffic will be prioritized over Video, and something like this could be the resulting mode chosen:

- Gaming: 70 Mb/s
- Voice: 0 Mb/s
- Video: 20 Mb/s

Case 2: the network status is that each of the three traffic types are demanding these speeds:

- Gaming: 80 Mb/s
- Voice: 30 Mb/s
- Video: 50 Mb/s

The resulting mode chosen is that the priorities will be maintained, and something like this could be the resulting mode chosen:

- Gaming: 70 Mb/s
- Voice: 20 Mb/s
- Video: 10 Mb/s

Case 3: the network status is that each of the three traffic types are demanding these speeds:

- Gaming: 100 Mb/s
- Voice: 30 Mb/s

- Video: 0 Mb/s

The resulting mode chosen is that the priorities will be maintained, and something like this could be the resulting mode chosen:

- Gaming: 80 Mb/s
- Voice: 20 Mb/s
- Video: 0 Mb/s

Therefore, Traditional QoS on the Accused Instrumentalities will choose the mode from the plurality of modes based on network status that can best align with the user-defined sequencing rules

23. Each Accused Instrumentality performs the step of prioritizing the data at the data communication system by assigning a priority to the data, wherein prioritizing the data comprises sequencing the data based at least in part on the user defined sequencing rule of the selected mode. MSI's RadiX documentation states Traditional QoS provides bandwidth for prioritized applications/tasks “by means of user-defined parameters.” The user enters the Internet upload/download bandwidth, specifies a Reserve % for High, Medium, and Low, and assigns clients to those priority groups. MSI’s QoS operates by assigning a priority to a data, which then sequences the data based at least in part on the user-defined sequencing rules of the selected mode.




(*E.g.*, https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com).

24. The Accused Instrumentalities perform the step of determining at least one of an effective link speed and a link proportion for at least one link. Relevant to the QoS capability provided by Accused Instrumentalities, the routers will determine at least one of an effective link speed and a link proportion for one link, in order to prioritize traffic that the user wants to prioritize. Using Traditional QoS and the Bandwidth Limiter, Accused Instrumentalities can determine an effective link speed and link proportion for at least one link.







(*E.g.*, https://www.youtube.com/watch?v=P__MXt2Gdsk).

25. The Accused Instrumentalities perform the step of metering inbound data by shaping the inbound data for the at least one link. Download bandwidth is allocated by High/Medium/Low priority and reserve percentages, as shown in the manual below. The Accused Instrumentalities have a data metering component of

the processing device. This is how Traditional QoS and AI QoS both work: the user-defined rules and the automatic rules of AI QoS are both enforced by metering the data flows.

> Engine to balance and distribute bandwidth across all types of network traffic. It assesses the available bandwidth in real-time and balances the flow of traffic in a way that prevents network congestion.

(*E.g.*, https://us.msi.com/blog/what-is-msi-ai-qos.com).




(*E.g.*, https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com).

26. The Accused Instrumentalities perform the step of metering outbound data by policing the outbound data for the at least one link. From the limits configured in the Traditional QoS setup screen, you can set the outbound limits for each priority group.




(*E.g.*, https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com).

27. The Accused Instrumentalities perform the step of communicating the data from the data communications system, wherein communicating the data comprises communicating the data based at least in part on at least one of the following factors.

## Multi-Gigabit Port with Flexible Setting

The RadiX AX6600 is equipped with 1x 2.5 Gigabit port and 4x Gigabit ports. Furthermore, the 2.5 Gigabit port can be reassigned to handle either incoming internet or outgoing LAN.

(*E.g.*, https://www.msi.com/Networking/RadiX-AX6600-WiFi-6-Tri-Band-Gaming-Router.com).

28. The Accused Instrumentalities perform the step of communicating the data based at least in part on at least the priority of the data. The Accused Instrumentalities are designed to communicate data based the priority of the data.




(*E.g.*, https://download-2.msi.com/archive/mnu_exe/pdf/2023/RadiX_AX6600_AX1800_infokit_tw.pdf.com).

29. The Accused Instrumentalities perform the step of communicating the data based at least in part on at least the effective link speed. Based on the traditional QoS configuration, when High, Medium and Low priority traffic groups are all competing for bandwidth, the router needs to determine which link gets how much bandwidth based on sequencing rules set by the user.

30. The Accused Instrumentalities perform the step of communicating the data based at least in part on at least the link proportion. Providing the ability for users to configure what portion of bandwidth gets allocated to High, Medium, and

Low priority traffic groups, this directly affects how Traditional QoS determines what bandwidth is provided for each link.

31. The Accused Instrumentalities perform the steps of receiving and prioritizing occurring at a transport layer of a protocol stack. MSI specifically says its AI QoS model considers packet-size variance, bursts, and distribution and uses those characteristics to predict traffic categories. It also says that time-critical packets are classified and marked. This is a factual basis that the classification necessarily operates on information available in the network stack. Upon information and belief, the transport-layer operation is performed using transport-layer flow/connection information, including information associated with TCP/UDP communications, because the Accused Instrumentalities classify and prioritize network traffic based on observable connection and flow characteristics.

32. **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claim 15 of the ‘860 Patent in the State of California, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant’s customers. Defendant advertised, offered for sale, and/or sold the ‘860 Patent Accused Instrumentality to its customers for use in a manner that Defendant knew infringed claim 15 of the ‘860 Patent. For example, Defendant provided marketing material

showing that the Accused Instrumentality, when used, infringes claim 1 of the ‘860 Patent. (*Supra* ¶¶19-31 (identifying marketing materials)).

33. On information and belief, since Defendant became aware of the ‘860 Patent and the infringement at least as of the date of service of this Complaint, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user’s guides. Exemplary materials are cited above. (*Supra* ¶¶19-31 (identifying marketing materials)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the ‘860 Patent by its customers.

34. On information and belief, since Defendant became aware of the infringement at least as of the date of service of this Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide

the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '860 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶19-31 (identifying marketing materials)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '860 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least one claim, Defendant knew that each such new use was made and adapted for infringement of the '860 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶19-31 (identifying marketing materials)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to infringe and is therefore

not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

35. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '860 Patent.

36. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '860 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

37. Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '860 Patent, Plaintiff will be greatly and irreparably harmed.

## V. JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that claim 1 of United States Patent No. 7,990,860 was infringed, either literally and/or under the doctrine of equivalents by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

October 22, 2026

Respectfully Submitted,

*/s/ Stephen M. Lobbin*
Stephen M. Lobbin
SML Avvocati P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
(949) 636-1391
sml@smlavvocati.com

*Attorneys for Plaintiff*
*Vision Sphere Labs LLC*

OF COUNSEL:

David R. Bennett
(motion for *pro hac vice* to be filed)
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com